

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 6, 2016**

**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 14-32939-BJH |
| LLOYD EUGENE WARD, | § | (Chapter 7) |
| | § | |
| DEBTOR. | § | |
| | § | |
| MICHAEL FRANK, DANA BLOCK, | § | ADV. PROC. NO. 15-3050-BJH |
| GREG BURKE, JESSICA CASEY, | § | |
| VICTORIA CASTILLO, JEREMY | § | Related to ECF. No. 72 |
| COZARD, JOHNNY KEEL, VALLERY | § | |
| MANN, JO MINAYA, BRIAN PARKER, | § | |
| CHRISTOPER PITRE, TIM CARR, | § | |
| CODDI DEAN and JOHN NELSON and | § | |
| ROBERT YAQUINTO, TRUSTEE, | § | |
| | § | |
| PLAINTIFFS, | § | |
| v. | § | |
| | § | |
| LLOYD WARD, | § | |
| | § | |
| DEFENDANT. | § | |
| | § | |

### **MEMORANDUM OPINION**

Before the Court are the (1) Motion for Partial Summary Judgment [AP No. 72]¹ and brief in support [AP No. 73] (the "**Motion for Partial Summary Judgment**") filed by debtor Lloyd Ward (the "**Debtor**"), (2) Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment [AP No. 81] and brief in support [AP No. 82] ("**Plaintiffs' Brief**") filed by Robert Yaquinto, Chapter 7 trustee of the Debtor's bankruptcy estate (the "**Trustee**"), and various creditors holding a judgment against the Debtor (collectively, the "**Judgment Creditors**" and, together with the Trustee, the "**Plaintiffs**"), and (3) Debtor's Reply in Support of Motion for Partial Summary Judgment [AP No. 85] ("**Debtor's Reply**").²  The Third Amended Complaint Objecting to Discharge Under 11 U.S.C. § 727 and 11 U.S.C. § 523 [AP No. 58] (the "**Complaint**"), which is the subject of the Motion for Partial Summary Judgment, objects to the entry of a discharge in favor of the Debtor pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), 727(a)(4)(D) and 727(a)(5), as well as the dischargeability of an Amended Final Judgment held by the Judgment Creditors (the "**Amended Final Judgment**")³ pursuant to 11 U.S.C. § 523(a)(6).  However, the Motion for Partial Summary Judgment only addresses the Plaintiffs' asserted failure, as the parties bearing the ultimate burden of proof, to provide sufficient summary judgment evidence to raise a genuine issue of material fact with respect to each element of their 11 U.S.C. § 727(a)(2)(A) claim.

---

¹ Citations to the docket in this adversary proceeding will take the format of "AP No. __," while citations to the docket in the Debtor's bankruptcy case will take the format of "BC No. __."

² The Debtor's Reply also included evidentiary objections to certain documents in the Plaintiffs' Appendix, which were addressed in Plaintiffs' Reply to Defendant's Objection to Plaintiffs' Summary Judgment Evidence [AP No. 88]. The Debtor's counsel withdrew the evidentiary objections on the record at the Hearing, so they are not addressed in this Memorandum Opinion.

³ The jury verdict was returned September 11, 2013, and a Final Judgment was entered on April 9, 2014. The Final Judgment was amended to correct a clerical error, and the Amended Final Judgment was entered on November 19, 2014.  *See* Amended Final Judgment, Cause No. 3:10-CV-1332-P, ECF No. 246, Northern District of Texas, Dallas Division (the "**District Court**"), of which this Court takes judicial notice.

**MEMORANDUM OPINION**     **2**

A hearing on the Motion for Partial Summary Judgment was held before this Court on August 3, 2016 (the "**Hearing**") and the Motion for Partial Summary Judgment is now ripe for ruling.

## I. SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment a court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56, as made applicable by FED. R. BANKR. P. 7056. In deciding whether a fact issue has been raised, the facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). A court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue of material fact exists for trial. *Peel & Co., Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001) ("the court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence") (citing *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 135 (2000)); *see also U.S. v. An Article of Food Consisting of 345/50 Pound Bags*, 622 F.2d 768, 773 (5th Cir. 1980) (the court "should not proceed to assess the probative value of any of the evidence...."). While courts must consider the evidence with all reasonable inferences in the light most favorable to the non-movant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pylant v. Hartford Life and Acc. Ins. Co.,* 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

**MEMORANDUM OPINION** 3

"After the movant has presented a properly supported motion for summary judgment, the burden then shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.,* 232 F.3d 473, 477 (5th Cir. 2000) (internal citation omitted). However, where, as here, "the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 174 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## II.     JURISDICTION AND VENUE

The District Court for the Northern District of Texas has subject matter jurisdiction over the Debtor's bankruptcy case (the "**Bankruptcy Case**") and this adversary proceeding under 28 U.S.C. § 1334. Venue is proper in this district under 28 U.S.C. § 1409. Objections to the Debtor's discharge are core proceedings under 28 U.S.C. § 157(b)(2)(J) (objections to discharge).

The Bankruptcy Case and all core and non-core proceedings in the Bankruptcy Case have been referred to this Court under the Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc adopted in this district on August 3, 1984. This Memorandum Opinion contains the Court's analysis of the Motion for Partial Summary Judgment.

## III.    FACTUAL AND PROCEDURAL HISTORY

The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Eastern District of Texas on May 1, 2014 (the "**Petition Date**"). The Bankruptcy Case was transferred to the Northern District of Texas on June 5, 2014 via the Order on Unopposed Motion to Transfer Venue [BC No. 1].

On April 30, 2015, the Plaintiffs filed their original complaint against the Debtor. That complaint was amended twice, resulting in the Complaint being the live complaint before this Court. As noted previously, the Complaint objects to the Debtor receiving a discharge in the

**MEMORANDUM OPINION** 4

Bankruptcy Case, as well as the dischargeability of the Amended Final Judgment, on multiple grounds. The only ground on which the Debtor seeks summary judgment, however, is the objection to his receipt of a discharge under 11 U.S.C. § 727(a)(2)(A).

## IV. LEGAL ANALYSIS

Section 727(a)(2)(A) of the Bankruptcy Code provides that a discharge may be denied where:

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
>
> (A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A). As explained by the Fifth Circuit:

> [t]he specific purpose of § 727(a)(2)(A) is to deny a discharge to those debtors who, intending to defraud, transfer property which would have become property of the bankrupt estate. In order to deny discharge, the statute requires that four elements be proven: (1) a transfer of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor or officer of the estate.

*Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989) (citations omitted). Intertwined with this Court's consideration of the statute is "the basic principle of bankruptcy that exception to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Judgment Factors, L.L.C. v. Athol Packer (In re Packer)*, 816 F.3d 87, 91 (5th Cir. 2016) (quotations and citation omitted).

Turning to the Complaint, the Plaintiffs' § 727(a)(2)(A) allegations fall into one of two categories: (1) transfers of property from the Debtor himself, and (2) transfers of property from an

entity that is alleged to be the Debtor's alter ego (an "**Alleged Alter Ego Entity**").[4]  The Court will address these in turn.

### A.     Transfers Made by the Debtor Personally

As to the first category of transfers, the summary judgment record contains sufficient evidence to raise a genuine issue of material fact that the Debtor transferred property belonging to him within one year of the Petition Date, satisfying the first three elements of the statute.  For example, the Debtor obtained a homeowners' insurance policy from Farmers Insurance effective February 6, 2013 (the "**Insurance Policy**").  Plaintiffs' App. 251-84.  The Insurance Policy lists the Debtor as the sole named insured, and insures personal property in the amount of $294,000.  *Id.* at 257, 289.  However, the Debtor's Amended Schedule B filed in the Bankruptcy Case only lists a fraction of that amount of personal property—approximately $8,500 in separate and community property,[5] excluding cash, automobiles, and ownership interests in various entities whose value is not covered by the Insurance Policy.  *See* Schedule B—Personal Property—Amended [BC No. 141] at 1-6.  The summary judgment record does not contain an inventory of the insured property or an explanation of why there was such a significant drop in value of the Debtor's personal property between the effective date of the Insurance Policy (February 6, 2013) and the Petition Date (May 1, 2014).

---

[4] The following entities are each an Alleged Alter Ego Entity (collectively, the "**Alleged Alter Ego Entities**"):  Ward Family Irrevocable Trust ("**WFT**"), Lloyd Ward, P.C ("**LWPC**"), Lloyd Ward Group, P.C. ("**LWGPC**"), Lloyd Ward & Associates, P.C., which is now Ward Legal Associates, P.C. ("**LWAPC**"), Glenn Properties Corporation ("**GPC**"), and Best Account Receivable Management Solutions, LLC ("**BRM**").  *See* Complaint ¶¶ 6-15, 98 (WFT); 16-22 (LWPC); 23-26, 101 (LWGPC); 27-32, 99 (LWAPC); 33-49 (GPC); and 50 (BRM).

[5] The Debtor also scheduled certain of his wife's alleged separate property and sole management community property "for disclosure purposes only."  If these amounts are included, the figure increases to $10,250, which is still far short of $294,000.

The summary judgment record also contains evidence of $96,000 in checks made payable to the Debtor, but which he deposited directly into the bank account of Lloyd Ward Group,[6] Plaintiffs' App. 177-78 ($34,000), 179-80 ($4,000), 182-83 ($15,000), 184-85 ($15,000), 186-89 ($15,000 and $13,000), as well as a $10,000 check made payable to the Debtor, but which he deposited directly into the account of the WFT, *id.* at 63, 86-89, each within one year of the Petition Date. There is no evidence in the record explaining why the Debtor did not deposit the funds into his personal bank account or why Lloyd Ward Group or WFT would be entitled to the funds.[7]

As just explained, the summary judgment record contains sufficient evidence to raise a genuine issue of material fact that (1) there was a transfer of property, (2) belonging to the Debtor, (3) within one year of the Petition Date. Thus, the remaining element is whether the transfers were made with the intent to hinder, delay, or defraud a creditor or officer of the estate. Although actual intent is required to prove this element, it may be inferred from the actions of the Debtor and may be proven by circumstantial evidence. *Chastant*, 873 F.2d at 91 (citations omitted). And, because the Debtor moved for summary judgment on a no-evidence basis, this Court must view the facts established by the summary judgment record in the light most favorable to the Plaintiffs.

With this standard in mind, the Court turns to the evidence in the summary judgment record, which shows that the jury in the District Court action returned a verdict on September 11, 2013. Soon thereafter, but prior to entry of the Final Judgment (and the Amended Final Judgment), the Debtor deposited $43,000 of checks made out to him personally into the bank account of Lloyd

---

[6] This entity is presumably LWGPC, but the summary judgment record is unclear.

[7] The Court notes that, should the Plaintiffs prove the facts alleged in the Complaint, the Debtor, Lloyd Ward Group (which is presumably LWGPC), and WFT would be alter egos and, under the Plaintiffs' interpretation of Texas jurisprudence, LWGPC's and WFT's assets would be retroactively considered the Debtor's property. *See* Complaint ¶¶ 6, 23 (alleging the WFT, LWGPC, and Ward "must be treated as one and the same"). In such a scenario, there could be no transfer of the Debtor's property (to LWGPC and/or WFT) because the "transfer" would be from the Debtor to himself. Because the summary judgment record contains evidence of other transfers sufficient to deny summary judgment, including the assets covered by the Insurance Policy, the Court need not address the effect of an alter ego finding at this point in the proceeding.

**MEMORANDUM OPINION**   7

Ward Group. *See* Plaintiffs' App. 184-85 ($15,000 deposited with Lloyd Ward Group on October 1, 2013), 186-89 ($28,000 deposited with Lloyd Ward Group on October 15, 2013). This is exclusive of $63,000 that was deposited with Lloyd Ward Group and WFT in the months preceding entry of the jury verdict. *Id.* 177-78 ($34,000 deposited with Lloyd Ward Group on July 23, 2013), 179-80 ($4,000 deposited with Lloyd Ward Group on August 14, 2013), 182-83 ($15,000 deposited with Lloyd Ward Group on August 29, 2013), 63 & 86-89 ($10,000 deposited with WFT on May 13, 2013). Based on this summary judgment evidence and the timing of the transfers, the Court concludes that a trier of fact could reasonably infer that the Debtor transferred his personal property with an intent to hinder, delay, or defraud creditors, specifically the Judgment Creditors, in the year prior to the Petition Date. Thus, the Plaintiffs have raised a genuine issue of material fact as to each element of their 11 U.S.C. § 727(a)(2)(A) claim with respect to transfers made by the Debtor personally.

Accordingly, the Motion for Partial Summary Judgment is denied as to transfers made by the Debtor within the year prior to the Petition Date.

### B. Transfers Made by the Alleged Alter Ego Entities

Before turning to its analysis of transfers of property by one or more of the Alleged Alter Ego Entities within one year prior to the Petition Date, the Court notes that a significant portion of the Plaintiffs' summary judgment evidence pertains to establishing the existence of an alter ego relationship between the Debtor and the Alleged Alter Ego Entities, and encompasses activity well outside the relevant one-year period. Under the plain language of the statute, only transfers made within one year of the Petition Date are relevant to a denial of the Debtor's discharge under § 727(a)(2)(A).

According to the Plaintiffs, once this Court makes an alter ego finding with respect to the Debtor and one or more of the Alleged Alter Ego Entities, the assets held by that alter ego entity retroactively become property of the Debtor's bankruptcy estate so that transfers of those assets made within one year of the Petition Date fall under the ambit of § 727(a)(2)(A). However, the Court need not determine whether the Plaintiffs have raised a genuine issue of material fact regarding their alter ego allegations because their § 727(a)(2)(A) claim fails as a matter of law for other reasons. To fully explain this ruling, the Court will focus its analysis on Section VIII of the Complaint (¶¶ 97-101), which is titled "Facts Supporting Denial of Discharge under 727(a)(2)(A)," parsing this section of the Complaint and the supporting summary judgment evidence on a by-paragraph and by-entity basis.

### 1. Transfers Involving the WFT

With respect to the WFT, the Complaint alleges:

> 97. [recitation of 11 U.S.C. § 727(a)(2)]
>
> 98. As set forth above, the Debtor is the alter-ego of the WFT. Over the course of 2011, 2012, and 2013, the Debtor made use of more than $500,000 which he caused to be placed into the Ward Family Irrevocable Trust from himself and his alter-ego or enterprise entities (without paying income taxes on those funds or declaring them as income) and then caused those funds to be withdrawn and used for various personal purposes, all of which were in direct contravention of the trust agreement. Substantial funds were deposited and withdrawn at the direction of the Debtor from the Ward Family Irrevocable Trust between 2011 and 2013. During May of 2013 alone, less than a year from the Debtor's bankruptcy petition, Debtor transferred $54,500 from the Ward Family Irrevocable Trust to himself and certain of his alter-egos. Ward has not identified where that money went, whether it still exists, or whether it is available to satisfy the creditors. Indeed, A. Ward,[8] the supposed trustee [of WFT], when asked where the money went, freely admitted that she does not know. She knows only that her husband controlled where that money went.

Complaint ¶¶ 97-98. The Plaintiffs' Brief explains these allegations by stating that: (1) "[b]etween April of 2011 and May of 2013, nearly $650,000 was deposited into the [WFT] and later withdrawn

---

[8] Referring to Amanda Ward, the Debtor's wife.

**MEMORANDUM OPINION**  9

from the trust to finance Ward's and A. Ward's business and personal expenses," Plaintiffs' Brief at 7 (citing Plaintiffs' App. 383-84 (A. Ward 2004 Exam at 120:20-121:9) and 9, 12-13, 15, 21, 23, 25, 28, 39, 63, 86-101 (bank records)), and (2) "in May of 2013, alone, the Debtor caused a total of $54,500 to be withdrawn from the WFT," *id.* (citing Plaintiffs' App. 61, 64-65 (bank records)).

As to the nearly $650,000 in alleged transfers between April 2011 and May 2013, only the May 2013 transfers fall within one year of the Petition Date, the relevant time period for a denial of discharge under § 727(a)(2)(A). Thus, for the relevant one-year period, the cited-to portions of the summary judgment record show that a total of $54,500 was withdrawn from the WFT account. Plaintiffs' App. 61, 64-65. Although the summary judgment record establishes the date and amount of the withdrawals, it does not disclose to whom the transfers were made or what the funds were used for. *Id.* The only information in this regard is found in the Complaint, where the Plaintiffs allege that the funds were transferred to the Debtor "and certain of his alter-egos." Complaint ¶ 98. Of course, allegations in the Complaint are not summary judgment evidence.

Based upon the *evidence* in the summary judgment record, the Plaintiffs' § 727(a)(2)(A) claim involving transfers by WFT within one year of the Petition Date fail for two reasons. First, even assuming WFT is the Debtor's alter ego and the funds were transferred by WFT to the Debtor "and certain of his alter-egos" as alleged in the Complaint, no transfers occurred, as explained below.

To understand this conclusion, one must consider the legal effect of an alter ego finding under Texas law, which is far from clear.[9] After reviewing the relevant jurisprudence, however,

---

[9] Because the § 727(a)(2)(A) allegations fail under either scenario, the Court need not determine which outcome is correct at this point in the proceeding. Instead, the Court only notes the possible outcomes for purposes of this analysis. Notably, while the vast majority of Texas and Fifth Circuit cases describe the result of an alter ego finding as an imposition of liability, there are a few cases that describe the result as the equivalent of a de facto merger. *Compare*

**MEMORANDUM OPINION** 10

it appears that an alter ego finding can have one of two outcomes under Texas law: (1) the entities are no longer legally separate and all assets of the non-debtor entity are retroactively reclassified as property of the Debtor or the bankruptcy estate (this is the outcome posited by the Plaintiffs[10]), or (2) the assets of the non-debtor entity may become liable for the payment of a specific debt owed by the Debtor (because alter ego is a remedy to assist in the collection of a proven debt against the Debtor), but the Debtor and the non-debtor remain legally distinct entities. Under the first alternative, and as alleged by the Plaintiffs in the Complaint, WFT's assets would be considered property of the Debtor retroactively. Because of this, no improper transfer could have occurred as a transfer from WFT to the Debtor, or vice versa, would be a transfer from the Debtor

---

*Lucas v. Tex. Indus., Inc.,* 696 S.W.2d 372, 374–75 (Tex. 1984) (holding that a court will generally not "disregard the corporate fiction and hold a corporation liable for the obligations of its subsidiary"); *Kaufman and Broad Home Corp. v. Employers Mut. Cas. Co.*, 2008 WL 281530, at *4 (Tex. App. – Ft. Worth Jan. 31, 2008, no pet.) ("under the alter ego theory, courts will disregard the corporate entity when there is such a unity between a corporation and an individual that the corporation ceases to be separate and when holding only the corporation liable would promote injustice (the injustice being avoided is leaving the plaintiff with an uncollectible judgment against the corporation while the alter ego goes free)." (internal citation omitted)); *Hart v. Moore*, 952 S.W.2d 90, 98-99 (Tex. App.—Amarillo 1997, pet denied) ("When an "alter ego" has been found to exist, the corporate structure may be disregarded and liability for torts committed by the corporation and liability for actual fraud based upon contractual agreements may be imputed and personal liability assessed." (internal citations omitted)); *Kern v. Gleason*, 840 S.W.2d 730, 736 (Tex. App.-Amarillo 1992, no writ). ("The piercing of the corporate veil is not a separate cause of action but a means of imposing individual liability where it would not otherwise exist.") (internal citations omitted); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999) ("Under Texas law the alter ego doctrine allows the imposition of liability on a corporation for the acts of another corporation…."); *Southmark Corp. v. Crescent Heights VI, Inc. (In re Southland Corp.)*, 1996 WL 459958, at *5 (5th Cir. 1996) (unpublished) ("The 'traditional goal' of piercing the corporate veil is to hold a corporation's shareholders, officers, and directors individually liable for the corporation's obligations, including reaching the assets of those individuals to satisfy the corporation's liabilities."); *Admiral Ins. Co., Inc. v. Arrowood Indem. Co.,* 471 B.R. 687, 703 (N.D. Tex. 2012) (quoting *Gardemal*); *Humphreys v. Medical Towers, Ltd.*, 893 F.Supp. 672, 689 (S.D. Tex. 1995) ("The alter ego doctrine is one method by which an obligee can pierce the corporate veil to reach the shareholder's assets." (internal citation omitted)); *O'Cheskey v. Housing for Texans Charitable Trust (In re American Housing Found.)*, 2012 WL 5430988, at *3 (Bankr. N.D. Tex. Nov. 7, 2012) ("A 'piercing' analysis concerns, in the traditional sense, the imposition of liability on, for example, a corporation's controlling shareholder for the wrongful acts of the corporation; for reverse piercing, liability is imposed on the corporation for the wrongful acts of the shareholder."); *with Matthews Constr. Co., Inc. v. Rosen*, 796 S.W.2d 692, 694 (Tex. 1990) ("Neither is Matthew's claim against Rosen stale because Rosen is simply Houston Pipe's 'other self'—he is not a legally separate entity from Houston Pipe.") *and In re Boyd*, 2012 WL 5199146, at *4 (Bankr. W.D. Tex. 2012) ("In essence, by piercing (or reverse-piercing) the corporate veil, the party establishes that the two entities are legally the same, not two different entities. Therefore, they are not really debtor and non-debtor, but simply one debtor." (citing *In re Pearlman*, 462 B.R. 849, 855 (Bankr. M.D. Fla. 2012)).

[10] *See* Complaint ¶ 6 ("An alter ego relationship exists between Debtor and the Ward Family Irrevocable Trust ("WFT") such that they must be treated as one and the same.").

**MEMORANDUM OPINION**     **11**

to himself.[11] Under the second alternative, where the assets of the non-debtor may become liable for payment of a debt of the Debtor but the Debtor and the alter ego non-debtor remain legally distinct, the funds transferred by the non-debtor within the year prior to the Debtor's bankruptcy filing were never the Debtor's property and thus an element of a § 727(a)(2)(A) claim cannot be established—*i.e.*, no property of the Debtor was transferred. Thus, even assuming the summary judgment record establishes the existence of genuine issue of material fact that the Debtor and WFT are alter egos of each other as the Plaintiffs allege, the § 727(a)(2)(A) allegations involving WFT fail as a matter of law.

Second, the Plaintiffs have failed to raise a genuine issue of material fact that the $54,500 in transfers were made with the requisite intent to hinder, delay, or defraud a creditor or officer of the estate. As relevant here, all that the Plaintiffs have shown by their summary judgment evidence is that $54,500 was withdrawn from the WFT account in the year prior to the Petition Date. The summary judgment record does not establish to whom the transfers were made or what the funds transferred were used for. Standing alone, the fact that $54,500 was withdrawn from the WFT account is insufficient for this Court to infer that the withdrawals were made with the intent to hinder, delay, or defraud a creditor of the Debtor or officer of the bankruptcy estate, particularly when WFT is not a named defendant liable on the Amended Final Judgment.

[11] To help explain its ruling, the Court gives a hypothetical example. Assume the Debtor wrote a $100 check from his personal account that was deposited into WFT's bank account in the year prior to the Petition Date. Should the Court accept the Plaintiff's interpretation of alter ego law and find that Ward and WFT are alter egos and "one and the same," then WFT's assets would retroactively be considered the Debtor's property. Thus, instead of there being a $100 transfer from the Debtor to WFT, the transaction would result in the Debtor transferring $100 from one of his accounts to another of his accounts. Under that scenario, no transfer of property of the Debtor occurred sufficient to satisfy the statutory requirements of 11 U.S.C. § 727(a)(2)(A).

For either or both of these reasons, the Court concludes that summary judgment must be granted in favor of the Debtor as to the alleged transfers from WFT in the year prior to the Petition Date.

### 2. Transfers Involving LWAPC and BRM

With respect to LWAPC and BRM, the Complaint alleges that:

99. Ward, via his alter-ego and enterprise entity Lloyd Ward & Associates, P.C., has also caused tens of thousands of dollars to be deposited into BRM for his personal benefit including, but not limited to, the payment of health insurance, funneling money to his wife, and benefitting himself while, at the same time concealing that he had available funds and fraudulently concealing the nature of the available funds. These transfers occurred throughout 2013 and 2014, both before and after the Debtor's bankruptcy petition. [The Complaint then details various payments from BRM to Humana on account of health insurance maintained by BRM for its employees and payments funding BRM's payroll, operating expenses, and rent.]

100. Notably, all of these transfers, whether to BRM or to and from the Ward Family Irrevocable Trust [WFT], were from companies and entities that, in the case of BRM never earned a profit during its entire existence and in the case of Lloyd Ward & Associates, P.C., [LWAPC] Lloyd Ward, P.C. [LWPC] and Lloyd Ward Group [LWGPC], did not earn a profit in 2012 or 2013. These entities existed solely to hide money and endeavor to protect the debtor's leviable assets.

Complaint ¶¶ 99-100.

In support of these allegations, the Plaintiffs argue in the Plaintiffs' Brief that "Ward uses the accounts of LWA[PC] as his personal accounts, making constant transfers to his personal accounts, sometimes multiple times per day," Plaintiffs' Brief at 10,[12] and that "Ward, by and through LWA[PC], has transferred funds to [BRM] repeatedly during the year prior to his

---

[12] Citing Plaintiffs' App. 202-241. Although this portion of the Appendix does show transfers from LWAPC, only the dates and amounts are given. There is nothing in the record explaining to whom the transfers were made or what the funds were used for.

**MEMORANDUM OPINION** 13

bankruptcy filing and throughout the pendency of the bankruptcy case without adequate consideration," *id.*[13]

Overall, the alleged transfers involving LWAPC and BRM fall into three categories: (1) transfers from LWAPC to the Debtor, (2) transfers from LWAPC to BRM, and (3) transfers from BRM to third parties. As explained below, with respect to each category of transfers, the Court concludes that the Plaintiffs' summary judgment evidence fails to raise a genuine issue of material fact as to each element of a § 727(a)(2)(A) claim and summary judgment must be granted in the Debtor's favor.

As to the first category of alleged transfers, the § 727(a)(2)(A) allegations fail for the same reasons explained in this Court's analysis of transfers involving WFT, *see* § IV.B.1, *supra*.[14] This is so regardless of whether an alter ego finding under Texas law would retroactively make the assets of LWAPC property of the Debtor, or would merely result in LWAPC's assets being liable to satisfy claims against the Debtor. Under the first alternative (which is the outcome Plaintiffs allege in the Complaint), the Debtor and LWAPC would be considered "one and the same." Complaint ¶¶ 27, 50. Thus, a transfer from LWAPC to the Debtor would be a transfer from the Debtor to himself, and there would be no improper transfer sufficient to satisfy the requirements of § 727(a)(2)(A). Under the second alternative, the assets of LWAPC were never the Debtor's property in the first instance, and again there would be no transfer of property of the Debtor to satisfy the statutory requirements.

---

[13] Citing Plaintiffs' App. 242-250 (LWAPC bank records showing prepetition transfers to BRM), 202-208 (LWAPC bank records showing pre and postpetition transfers to BRM), 337-338 (deposition of the Debtor at 47:10-48:4), 297-298 (deposition of A. Ward at 52:9-53:9), 286-287 (deposition of A. Ward at 7:9-8:12).

[14] The Court's analysis regarding the effect of an alter ego finding under Texas law is consistent among the various Alleged Alter Ego Entities; thus, the analysis is not repeated verbatim here. A more thorough discussion may be found in § IV.B.1, *supra*.

**MEMORANDUM OPINION**                                                                                    **14**

This category of transfers also suffers from two additional flaws. First, the Court notes that transfers from LWAPC *to* the Debtor, by definition, could not be made with an intent to hinder, delay, or defraud a creditor or officer of the estate because such funds in the Debtor's hands would become an asset available to pay the Debtor's creditors. Second, although the summary judgment record shows numerous withdrawals from LWAPC during the relevant period, it contains no information regarding to whom the transfers were made or what the funds were used for. Thus, the summary judgment record does not support the allegation in the Complaint that the Debtor withdrew funds from LWAPC's bank accounts for his personal use.

As to the second category of transfers (transfers from LWAPC to BRM), there is a possible scenario where the Court could ultimately conclude that the Debtor and LWAPC are alter egos, but BRM is not. Thus, should the Court determine that, under Texas law, an alter ego finding results in LWPAC's assets retroactively becoming property of the Debtor (as the Plaintiffs contend), then transfers from LWAPC to BRM could be considered transfers of the Debtor's property to BRM. Although that scenario was neither pled in the Complaint nor argued at the Hearing, the Court will nonetheless explain why it also fails. Notably, the only evidence in the summary judgment record is that, in the year prior to the Petition Date, LWAPC (as the Debtor's alleged alter ego) transferred $15,260 to BRM. *See* Plaintiffs' App. 205, 207 ($760 transferred on November 19, 2013 from LWAPC to BRM), 242 ($9,500 transferred on September 13, 2013 from LWAPC to BRM), and 245-47 ($5,000 transferred on August 14, 2013 from LWAPC to BRM). However, neither LWAPC or BRM are liable under the Amended Final Judgment (so there is no apparent motivation to transfer funds to conceal assets), and there is nothing in the summary judgment record suggesting that alter ego allegations had been raised against LWAPC (or the Debtor) at the time these transfers were made. Simply put, there is no evidence in the summary

judgment record that the transfers were made with an intent to hinder, delay, or defraud a creditor of the Debtor or officer of the estate. Instead, the relevant allegations are that the transfers were made without adequate consideration and to conceal that the Debtor had funds that he could use to pay creditors. Complaint ¶ 99. If anything, the allegations would support a fraudulent conveyance claim; however, that cause of action does not appear in the Complaint.

Finally, as to the third category of transfers (transfers from BRM to third parties), a potential (and unpled) scenario exists where the Court could conclude that (1) Ward, LWAPC, and BRM are alter egos, and (2) under Texas law, an alter ego finding results in LWAPC's and BRM's assets retroactively becoming property of the Debtor so that (3) payments by BRM to third parties are a transfer of property of the Debtor. However, this unpled scenario also fails because the Plaintiffs have failed to cite the Court to any evidence in the summary judgment record that BRM made transfers to third parties during the relevant time period. All that is before the Court is the summary judgment evidence that BRM received funds from LWAPC. Plaintiffs' App. 205, 207, 242, 245-47. While the Complaint alleges that those funds were then used to pay payroll (which included payroll owing to the Debtor's wife, Amanda), healthcare premiums (the Wards were a part of BRM's benefit plan), rent, and other operating costs, there is no evidence in the summary judgment record to support those allegations. *Id.* ¶ 54, 99. Moreover, it is undisputed that BRM is a business with ongoing operations. *Id.* ¶ 99. Thus, payments from BRM on account of the types of expenses delineated in the Complaint (even assuming they were made) are insufficient for this Court to infer that such payments were made by BRM with the intent to hinder, delay, or defraud a creditor of the Debtor or officer of the estate.

For the foregoing reasons, the Court concludes that the Plaintiffs failed to raise a genuine issue of material fact with respect to the transfers involving LWAPC and BRM and that summary judgment must be granted in the Debtor's favor with respect to those transfers.

### 3. Transfers involving LWGPC

As alleged in the Complaint:

> 101. On or about August 16, 2013, less than a year before Debtor filed his bankruptcy petition, Debtor, by and through his alter-ego entity Lloyd Ward Group, P.C. [LWGPC], transferred assets to Camden Credit Services, Inc., another entity owned and controlled by Debtor. The transferred assets consisted of the rights to business contracts with Global Client Solutions, LLC and client accounts resulting from those contracts. See Exhibit K. Ward transferred these assets from an alter-ego entity, the existence of which was known to his creditors, to an entity he has failed to disclose as an entity in which he held an ownership interest and the existence of which he failed to disclose at all in his original Statement of Financial Affairs. Debtor made this transfer to hinder, delay, and defraud his creditors.

*Id.* ¶ 101 (footnote omitted); *see* Plaintiffs' App. 191-98 (Assignment and Assumption Agreement).

The Assignment and Assumption Agreement underlying these allegations is dated as of August 16, 2013, and purportedly transfers various contracts from LWGPC to Camden Credit Services, Inc. ("**Camden**"). A review of the Assignment and Assumption Agreement contained in the summary judgment record shows that it is only signed by LWGPC; however, it is "acknowledged by" each entity (LWGPC, Camden, and Global Client Solutions, LLC) on the last page of the document with the initials of "LW" (presumably the Debtor's initials)." Plaintiffs' App. 193, 198.

As an initial matter, the Court notes that it is unsure whether the Plaintiffs are alleging that Camden is the Debtor's alter ego. If so, the allegations involving the transfer of contracts from LWGPC to Camden under § 727(a)(2)(A) must fail for the same reasons set forth above with respect to WFT, *see* §IV.B.1, *supra*. Namely, if an alter ego finding under Texas law would result

**MEMORANDUM OPINION** 17

in LWGPC's and Camden's assets retroactively becoming the Debtor's property, then no improper transfer could have occurred (as the transfer would be a transfer from the Debtor to himself). Alternatively, if an alter ego finding would only make LWGPC and/or Camden's assets liable to satisfy claims against the Debtor, then the assets at issue were never property of the Debtor and no transfer within the statutory requirements of § 727(a)(2)(A) occurred.

If the Plaintiffs are not alleging that Camden is the Debtor's and LWGPC's alter ego, or if the Court were to find that LWGPC is the Debtor's alter ego but Camden is not (although such a scenario was not pled in the Complaint), the § 727(a)(2)(A) allegations still fail due to the Plaintiffs' failure to raise a genuine issue of material fact regarding the Debtor's alleged improper intent. Indeed, the only evidence in the summary judgment record remotely supporting a finding of the Debtor's intent to hinder, delay, or defraud the Judgment Creditors is that the Assignment and Assumption Agreement was (1) signed in the interim between return of the jury verdict and entry of the Amended Final Judgment, and (2) entered into among entities allegedly controlled by the Debtor. However, LWGPC was not a defendant in the District Court action and is not liable to the Judgment Creditors under the Amended Final Judgment, so it has no apparent motivation to transfer the contracts away in an attempt to hinder, delay, or defraud the Judgment Creditors. Moreover, there is no evidence in the summary judgment record that alter ego allegations were pending against the Debtor and any of the Alleged Alter Ego Entities at the time of the transfer. And, although the Plaintiffs allege that the Assignment and Assumption Agreement was not supported by consideration, Plaintiffs' Brief at 13, there is no evidence in the summary judgment record to support such an allegation and, to the contrary, the Assignment and Assumption Agreement expressly states that (1) it was made in exchange for "good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged," and (2) Camden accepted all

obligations and liabilities owing to third parties under the various related agreements. Plaintiffs' App. 191-92.

Even viewing the facts and inferences to be drawn from the summary judgment evidence in the light most favorable to the Plaintiffs, the Court finds that there is simply no basis upon which it can infer that the transfers made pursuant to the Assignment and Assumption Agreement were made with the intent to hinder, delay or defraud a creditor of the Debtor or officer of the estate. For these reasons, the Court concludes that the Plaintiffs have failed to raise a genuine issue of material fact with respect to the transfers from LWGPC to Camden and that summary judgment must be granted in the Debtor's favor with respect to those transfers.

### 4. Transfers Involving Other Alleged Alter Ego Entities

Although the Complaint contains allegations against all of the Alleged Alter Ego Entities, the Plaintiffs' Brief and their argument at the Hearing only addressed WFT, LWGPC, LWAPC, and the Debtor. The Plaintiffs have failed to cite the Court to any evidence in the summary judgment record regarding transfers from LWPC and GPC that would implicate § 727(a)(2)(A).[15] Accordingly, to the extent that the Complaint seeks a denial of the Debtor's discharge under § 727(a)(2)(A) based upon alleged transfers from LWPC and/or GPC, the Court concludes that the Plaintiffs have failed to raise a genuine issue of material fact and that the Motion for Partial Summary Judgment must be granted with respect to any such transfers.

## V. CONCLUSION

Based upon the summary judgment record, the Court concludes that:

    a. The Plaintiffs raised a genuine issue of material fact with respect to each element of their § 727(a)(2)(A) claim with respect to transfers made by the Debtor within

---

[15] LWPC is briefly discussed on page 10 of Plaintiffs' Brief; however, it is only in the context of the Debtor's wife, Amanda, not being sure which Ward-related entity employed her.

**MEMORANDUM OPINION**      **19**

      one year of the Petition Date, and the Motion for Partial Summary Judgment must be denied as to those transfers. *See* § IV.A, *supra.*

  b. The Plaintiffs failed to raise a genuine issue of material fact with respect to each element of their § 727(a)(2)(A) claim with respect to transfers made by:

    i. WFT within one year of the Petition Date, and the Debtor is entitled to summary judgment as to those transfers as a matter of law. *See* §IV.B.1, *supra.*

    ii. LWAPC and/or BRM within one year of the Petition Date, and the Debtor is entitled to summary judgment as to those transfers as a matter of law. *See* § IV.B.2, *supra.*

    iii. LWGPC within one year of the Petition Date, and the Debtor is entitled to summary judgment as to those transfers as a matter of law. *See* § IV.B.3, *supra.*

    iv. LWPC and/or GPC within one year of the Petition Date, and the Debtor is entitled to summary judgment as to those transfers as a matter of law. *See* § IV.B.4, *supra.*

An order granting in part and denying in part the Motion for Partial Summary judgment shall be entered separately.

    The Court hereby directs the parties' counsel to confer with each other and attempt to submit an agreed form of order consistent with this ruling to the Court within fourteen days of the entry of this Memorandum Opinion on the Court's docket. If no agreement can be reached, each party shall submit its own proposed order on the fourteenth day after entry of this Memorandum Opinion on the Court's docket, along with an explanation of why the other side's proposed order is improper.

### # # # END OF MEMORANDUM OPINION # # #